1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                    EASTERN DISTRICT OF WASHINGTON
7
CINCINNATI INSURANCE
8  COMPANY,                                  Case No. 4:16-CV-5090-LRS
9       Plaintiff/Counterclaim Defendant,
10       v.                                   ORDER DENYING MOTION FOR
11                                            SUMMARY JUDGMENT
   HARRY JOHNSON PLUMBING &
12  EXCAVATING CO., INC.,
13           Defendant/Counterclaimant.
14
15       BEFORE THE COURT is Harry Johnson Plumbing & Excavating Co., Inc.'s
16 ("HJPE") Motion for Summary Judgment (ECF No. 9). The Motion seeks dismissal
17 of Cincinnati Insurance Company's ("CIC") claims for declaratory judgment
18 asserted in the Complaint (ECF No. 1). CIC is opposed (ECF No. 14-17). Defendant
19 has filed a Reply (ECF Nos. 19-23).   Telephonic oral argument on the matter was
20 heard on October 4, 2016. Plaintiff was represented by Bryana L Blessinger.
21 Defendant was represented by Brian Sheldon.
22
23 I.    BACKGROUND
24
25       HJPE's initial Statement of Facts (ECF No. 10) are undisputed. *See* L.R. 56.1(d);
26
27 ECF No. 17 (CIC's Statement of Facts acknowledging HJPE's Statement of Facts
28

ORDER - 1

and setting forth "additional pertinent facts."). In Reply, HJPE disputes and/or clarifies the additional facts alleged by CIC. (ECF No. 22). The parties do not contest the validity or authenticity of the insurance policy upon which CIC has relied for its claims (ECF No. 1, Ex. 1), although the parties' contest the policy's interpretation. The following facts are undisputed, unless otherwise noted.

**A. The CIC Policy**

Plaintiff Cincinnati Insurance Company ("CIC") issued Policy Number ENP0227281 with effective dates of December 31, 2014 to December 31, 2015 ("the CIC Policy" or the "Policy") to Defendant/counterclaimant Harry Johnson Plumbing & Excavation ("HJPE") as the named insured. A copy of the Policy that CIC alleges to be true and correct is attached to and incorporated by reference in the Complaint. (ECF No. 1, Ex. 1). The policy insured "Contractors' Equipment (and Tools)."

**1. Initial Pages**

The Policy is allegedly 24-pages long. It begins with "Common Policy Declarations," followed by sections titled: "Washington Common Policy Conditions"; "Summary of Premiums Charged"; "Notice to Policyholders"; "Washington Exclusion of Certified Acts and Other Acts of Terrorism"; "Signature Endorsement"; "Contractors' Equipment (and Tools) Coverage Part Declarations"; and "Contractors' Equipment (and Tools) Coverage Form Washington."

The "Contractors' Equipment (and Tools) Coverage Part Declarations" states in

ORDER - 2

part:

> FORMS AND/OR ENDORSEMENTS APPLICABLE TO CONTRACTORS'
> EQUIPMENT (AND TOOLS)
> MA108WA      06/07 CONTRACTORS' EQUIPMENT (AND TOOLS)
>                        COVERAGE FORM WASHINGTON
> MA135WA      02/12 COMMERCIAL INLAND MARINE CONDITIONS
>                        WASHINGTON
> MA4061WA    02/12 WASHINGTON CHANGES.

ECF No. 1, Ex. A at 18. *See* ECF No. 10, SOF 1.

The next pages are a series of endorsements, including the "Commercial Inland Marine Conditions Washington" endorsement (the "Inland Marine endorsement"), containing the "Concealment, Misrepresentation or Fraud" provision upon which CIC relies in its Complaint seeking declaratory relief.

## 2. The Commercial Inland Marine Conditions Washington Endorsement

The first words at the top of the Inland Marine endorsement read: "**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**." The introductory phrase of the endorsement states as follows:

> The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms. These conditions replace any similar conditions or clauses in any Commercial Inland Marine Coverage forms:

(ECF No. 1, Ex. A at 26).

This endorsement's "General Conditions" provision states:

> A. **Concealment, Misrepresentation or Fraud**
> This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a

ORDER - 3

material fact, by you or any other insured, at any time, concerning:
1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

*Id*. at 27 (the "CMF provision")

**B. CIC's Complaint for Declaratory Judgment**

This dispute arises out HJPE's reported theft and claim for coverage for the loss of a 1996 14H Caterpillar Road Grader from a location in Whitman County, near a bridge reconstruction project HJPE had performed for the County known as "the Hatley Bridge project."    HJPE reported the loss on or about September 8, 2015. CIC investigated the claim.   On March 21, 2016, CIC's counsel sent a letter to HJPE's counsel agreeing to "extend coverage for the 12G Grader that is scheduled on the Policy." (ECF No. 10, SOF No. 8; ECF No. 11 at 31).   On April 1, 2016, HJPE's counsel informed CIC that its 12G grader had not been stolen and was still being used by HJPE.  (ECF  No. 10, SOF No. 9). By letter dated July 1, 2016, CIC denied coverage for the 14H Grader.  (ECF No. 11 at 5-14). On July 6, 2016, CIC filed its Complaint for Declaratory Judgment (ECF No. 1) incorporating by reference an attached copy of the insurance policy.

The Complaint alleges, among other allegations, that during the course of its investigation CIC discovered:

1. HJPE initially reported loss of a 12G road grader SN#61M6164, then later

ORDER - 4

that same day reported it was a 14H Grader instead of a 12G (¶¶5, 7);

2.  HJPE could not provide a serial number for the 14H Grader;

3.  HJPE's October 16, 2015 Proof of Loss form alleged the purchase of the 14H Grader in 2004 for $197,500, but in his examination under oath on February 8, 2016, HJPE owner Mark Johnson stated the purchase was in 2002 for $147,500 (¶¶8, 9).

4.  "HJPE used a 12G Grader on the project," but no one CIC interviewed "recalled seeing a 14H Grader at the project site." (¶ 10)

5.  Tax returns provided to CIC did not enable CIC "to determine what equipment HJPE had claim[] depreciation on" (¶ 13); and

6.  HJPE refused to allow CIC to speak directly with HJPE's accountant. (¶ 13).

The Complaint seeks declaration that coverage is not owed for the alleged theft of the 14H Grader. It alleges HJPE breached a policy condition:

> Mr. Johnson breached the Concealment, Misrepresentation or Fraud condition by, among other things: (a) intentionally providing a false account of the alleged purchase of a 14H Grader; (b) intentionally providing a false account of the alleged occurrence of a theft of a 14H Grader from a jobsite in Whitman County, Washington; (c) intentionally providing false information on HJPE's proof of loss.

(ECF No. 1, ¶ 15).  The Complaint also alleges coverage is precluded because of the lack of sufficient evidence of an ownership interest in a 14H Grader, as well as an inadequate explanation of what happened to it:

> HJPE cannot meet its burden of proving (a) that it owned a 14H Grader; (b)

ORDER - 5

the occurrence of a theft of a 14H Grader on or about September 4, 2015 from its jobsite in Whitman County, Washington.

(ECF No. 1, ¶16).

On July 15, 2016, HJPE responded with its Answer, Affirmative Defenses and Counterclaims. On August 4, 2016, HJPE filed the present Motion for Summary Judgment. On September 1, 2016, the court entered its Scheduling Order. At the time of the filing and Plaintiff's response, Plaintiff had served but not reviewed responses to discovery and no depositions had taken place.

HJPE seeks summary judgment in its favor on several affirmative defenses it asserts against CIC's coverage defenses. HPJE makes four arguments. First, HJPE contends that as a matter of law, the Inland Marine endorsement upon which CIC relies does not apply to the Policy. Second, it contends CIC is "estopped" from asserting additional coverage defenses under the "mend the hold" doctrine (Affirmative Defense No. 5). Third, HJPE claims that if the Concealment, Misrepresentation or Fraud ("CMF") provision applies, CIC was required to tender back the premiums to HJPE (Affirmative Defense No. 2). Finally, HJPE claims CIC has waived its right to enforce the CMF provision by extending an offer of coverage for the 12G Grader (Affirmative Defense No. 4). In response, CIC opposes the merits of the contentions and advocates for restraint on these issues until the resolution of threshold issues of coverage are addressed.

## II.    STANDARD OF REVIEW

In deciding motions under Federal Rule of Civil Procedure 56, the Court applies *Anderson, Celotex*, and their Ninth Circuit progeny. A*nderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings" and "designate specific facts" in the record to show a trial is necessary to resolve genuine disputes of material fact. *Id*. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went

ORDER - 7

uncontroverted at trial. *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For summary judgment purposes, an issue must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue is "genuine" if it must be established by "sufficient evidence supporting the claimed factual dispute...to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (*quoting First Nat. Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)); *see also British Motor. Car Distrb. v. San Francisco Auto. Indus. Welfare Fund*, 883 F.2d 371, 374 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (citation omitted).

In considering a motion for summary judgment, the court does not make findings of fact or determine the credibility of witnesses, *Anderson*, 477 U.S. at 255; rather, it must draw all inferences and view all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).

## III.    DISCUSSION

ORDER - 8

**A. Choice of Law, Burdens of Proof, and Judicial Restraint**

As a threshold matter, it is of consequence to point out that this court has subject matter jurisdiction based upon diversity of citizenship. There is no question that the law of the forum state applies and, as such, the court will apply the law of Washington in a manner as the Washington Supreme Court would apply it. Under Washington law, the interpretation of an insurance policy presents a question of law to be decided by the court. *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wash.2d 264, 267 (2011). Generally, in Washington, contracts for insurance are subject to the same rules of interpretation as are other contracts.

Analysis of a contract is a two-step process. The court *first* examines the policy provisions to determine if "the loss falls within the scope of the policy's covered losses." *Nw. Bedding Co. v. Nat'l Fire Ins. Co. of Hartford*, 154 Wash.App. 787 (Wash.Ct.App. 2010). If the party contesting the denial of coverage shows that the loss is within the scope of covered losses, "[t]he insurer then must show that the claim of loss is excluded." *Id*.

When, as here, the insurance company seeks only a declaration of non-liability and the insured asserts coverage under the policy and a counterclaim for money damages, the insured is in reality seeking recovery under the policy and the insurer is denying the liability. *See e.g., Am. Eagle Ins. Co. v. Thompson*, 85 F.3d 327, 331 (8th Cir.1996) ("Stripped of its procedural posture, this action is, at base, a claim by

Thompson [the insured who ultimately bore the burden] that he is covered under an insurance policy and a denial by the insurer [declaratory judgment plaintiff] that coverage properly exists."). Even though the insurer has initiated this declaratory judgment action and is the plaintiff, the court still adheres to the fundamental rule that the burden of proof rests on the policyholder to establish its claim is within coverage of the policy, and once it has done so, the insurer bears the burden of proof of establishing that the claim is within an exclusion. *See Queen City Farms, Inc. v. Central Nat. Ins. Co. of Omaha*, 126 Wash.2d 50 (1994).

Defendant's Motion for Summary Judgment focuses entirely on the second step of the contract analysis – the exclusion of coverage.  The parties agree, contested issues of fact exist in step one–whether a covered loss exists.  CIC's Complaint contends that HJPE cannot show that it owned a 14H Grader at the time of the claimed loss and under the insurance policy,  it will not pay more than an amount equal to the insured's interest. (ECF No. 1, ¶16). Property insurance is a contract for indemnity.  As such, it entitles the insured to recover for actual loss and to the extent coverage anticipates an advantage or benefit to the insured, it is void against public policy.   RCW 48.18.040(1) provides that [n]o contract of insurance on property…shall be enforceable except for the benefit of persons have an insurable interest in the things insured."  Pursuant to RCW 48.18.040(2), an "insurable interest" is "any lawful and substantial economic interest in the safety or

preservation of the subject of the insurance free from loss, destruction, or pecuniary damage."

This issue merits mention because a claimant's burden of demonstrating an insurable interest serves a significant and fundamental public policy underlying insurance law which prevents insureds from using their coverage for illegitimate purposes. *See Gossett v. Farmers Ins. Co. of Washington*, 133 Wash.2d 954, 968 (1997), reconsideration denied ("opportunities for net gain to an insured through receipt of insurance proceeds exceeding a loss should be regarded as inimical to the public interest…"). Payment of insurance premiums on property does not give rise to insurable interest where ownership of property belongs elsewhere. *Gossett v. Farmers Ins. Co. of Washington*, 133 Wash.2d 954 (1997), reconsideration denied.

The court views much of Defendant's Motion as asking the court to put the proverbial cart before the horse and decide the second step before the first. Put another way, if HPJE cannot meet its burden of demonstrating that it had an insurable interest against theft of a 14H grader, then the claimed illegitimacy of CIC's defense based upon the Inland Marine endorsement is not relevant and needs no ruling from the court. In resolving the Defendant's Motion the court seeks not to delay disposition of the litigation nor offend the principle of judicial restraint.

**B. Applicability of Inland Marine Endorsement**

HJPE contends CIC's request for declaratory judgment based on a provision

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

contained within the Commercial Inland Marine Conditions Washington Endorsement, as alleged in ¶15 of the Complaint, fails as a matter of law and should be dismissed.  HJPE asks this court to decide that the Inland Marine endorsement does not apply to CIC Policy No. ENP 227281 providing coverage for Contractors' Equipment (and Tools).  In response, CIC argues that the Inland Marine endorsement (and its provisions) is unambiguously part of the policy.

Final resolution of the party's policy arguments regarding CIC's defense to coverage is premature, when questions of whether the policy even covers the 14H Grader remain outstanding.  Even assuming the policy applies to the claimed loss of the 14H Grader and the applicability of the Inland Marine endorsement becomes relevant, the courts notes that the endorsement is repeatedly referenced throughout the policy: it is explicitly named in the list of applicable endorsements in the language of the Contractors Equipment (and Tools) Coverage part; and the applicability (and  inapplicability) of specific provisions are discussed in the Contractors' Equipment (and Tools) Coverage Form Washington, both in Section B (Valuation) and Section C ("How Much We Pay").  (ECF No. 1, Ex. A at 23-24). The endorsement's introductory language states it applies "in addition to the Common Policy Conditions," which the parties seem to agree apply to the Policy. *See* ECF No. 19 at 3("For example, the Washington Common Policy Conditions endorsement…unambiguously applies to all policies."). Though HJPE contends an

"average purchaser of inland marine coverage would expect the policy to cover risks inherent with land transportation of goods…" (ECF No. 9 at 4), in fact, the current concept of "inland marine" "is very broad, encompassing a range of specific risks that is so wide…" 11 Couch on Ins. § 154:3. Property that can be insured under inland marine contracts falls into categories, which can include "mobile equipment and property, such as a tractor, crane, or bulldozer while being moved from one location to another." 11 Couch on Ins. § 154:3; *see also* Williston on Contracts §49:27 (stating the term inland marine is 'broad" and citing case law describing it as encompassing a "variety of specialized insurance coverage," functioning "basically as a form of property insurance…").

Whether and how the Inland Marine endorsement applies to this insurance policy is not an issue appropriate for resolution at this time. The court declines Defendant's requested dismissal of CIC's declaratory judgment action or any of CIC's coverage defenses based upon the alleged inapplicability of the Inland Marine endorsement.

**C. Estoppel Under the Mend the Hold Doctrine**

HJPE asks the court to estop CIC from denying coverage based upon any other reason than the Concealment, Misrepresentation or Fraud provision contained in the Inland Marine endorsement.  It relies upon the "mend the hold" doctrine, which prevents an insurance company from denying coverage on one basis and then asserting new and different grounds for its denial when the original ground is

challenged or fails. *Karpenski v. Am. Gen. Life Cos*., 999 F.Supp.2d 1235, 1245 (W.D.Wash.2014) (citing Washington and federal common law and holding the doctrine prevents an "insurer from changing the basis for avoiding liability after the onset of litigation.").    The mend the hold doctrine in Washington, requires the insured to demonstrate that it either suffered prejudice as a result of the insurer's failure to raise sooner a ground for denying coverage or that the insurer acted in <u>bad faith</u> when it failed to raise that ground sooner. *Id.* (*citing Hayden v. Mut. of Enumclaw Ins. Co*., 141 Wash.2d 55 (Wash. 2000)); *see also*, *Ryerson Inc. v. Federal Ins. Co.*, 676 F.3d 610, 614 (7th Cir.2012) ("When there is no prejudice to the opposing party, invoking the doctrine of mend the hold to bar a valid defense is overkill.").

HJPE has not demonstrated unfair surprise and cannot persuasively argue that the defense of lack of insurable interest is an "entirely new defense." (ECF No. 19 at 7). CIC's declination letter sets forth a number of policy provisions (including the insurable interest provision) and grounds sufficient to preserve its right to articulate additional bases for the denial of coverage. *See* ECF No. 11 (Sheldon Aff.), Ex. A at 4-5, 13-14. Ultimately the denial letter concludes that the CIC is denying coverage because there "is no evidence HJPE owned a 14H grader at the time of loss." *Id*. CIC's Declaratory Judgment Complaint is consistent with its declination letter. The money, time and effort spent responding to CIC's requests during its 9-month period

of investigation is insufficient to justify application of the equitable mend the hold doctrine.

### D. Return of Premiums Paid

HJPE's Motion also contends that 1) *if* the Concealment, Misrepresentation and Fraud provision applies, then under HJPE's interpretation of the language of the policy, CIC must void the entire policy   (not deny coverage); and 2) CIC is "precluded from voiding the policy" because it has failed to tender back HJPE's premium.  Again, this argument places the cart before the horse.  Whether the CMF provision even applies, if it does, when the alleged concealment occurred (at contract formation or during loss reporting), and the appropriate remedy are all questions that cannot be determined on the present record.

### E. Waiver

Finally, HJPE contends CIC waived its defense based upon the CMF provision because "with full knowledge of the purported misrepresentations," it nevertheless "attempted to settle a claim" for the *12G* Grader in March 2016. (ECF No. 19 at 8). CIC contends it made a good faith offer to provide coverage for a grader it confirmed was on the job site and owned by HPJE; however, it did not confirm HJPE was still in possession of the 12G grader until after the offer.  Defendant's waiver argument is rejected.  An insurer cannot waive policy coverage issues when a policy does not provide coverage. *See Transamerica Ins. Group v. Chubb & Son, Inc.*, 16 Wn.App.

247, 253, (1976) (holding that an insurer could not waive the right to deny coverage if there was no coverage to deny). CIC could not have waived its right to deny coverage for the 14H grader, if its policy does not cover the 14H grader, which is an outstanding question not before the court today.

IV.    **CONCLUSION**

Defendant's Motion for Summary Judgment (ECF No. 9) is **DENIED**.

DATED this 24th day of October, 2016.

*s/Lonny R. Suko*

_____

LONNY R. SUKO
Senior U.S. District Court Judge

ORDER - 16