UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CINCINNATI INSURANCE
COMPANY,

    Plaintiff/Counterclaim Defendant,

    v.

HARRY JOHNSON PLUMBING &
EXCAVATING CO., INC.,

    Defendant/Counterclaimant.

Case No. 4:16-CV-5090-LRS

ORDER GRANTING CIC'S MOTION
FOR PARTIAL SUMMARY
JUDGMENT

BEFORE THE COURT are: Cincinnati Insurance Company's ("CIC")
Motion for Partial Summary Judgment (ECF No. 61) seeking dismissal of certain
Counterclaims of Harry Johnson Plumbing & Excavating Co., Inc.'s ("HJPE");
HJPE's Motion to Strike (ECF No. 79) and Motion to Strike the Motion to Strike
(ECF No. 88). Oral argument was heard on September 26, 2017. CIC was
represented by Lloyd Bernstein and Bryana L Blessinger. HJPE was represented by
Brian Sheldon.

    In this insurance coverage dispute, HJPE asserts that CIC is liable for breach
of contract, bad faith, violations of Washington's Consumer Protection Act ("CPA")

and Washington's Insurance Fair Conduct Act ("IFCA"). *See* ECF No. 4. HJPE also seeks injunctive relief. *Id*. CIC moves for partial summary judgment on the bad faith, CPA, IFCA, and injunctive relief counterclaims. ECF No. 61. The court has considered the argument of counsel and reviewed the completed record and files herein. For the reasons discussed below, CIC's Motion for Partial Summary Judgment (ECF No. 61) is **GRANTED**.

## I. BACKGROUND

The following facts are undisputed, unless otherwise noted. Additional background is set forth in the court's October 24, 2016 Order Denying HJPE's Motion for Summary Judgment. *See* ECF No. 26.

A. **CIC Insurance Policy and List of Scheduled Equipment**

HJPE is a business owned by Mark Johnson and the named insured on CIC's policy for contractors' equipment, Policy Number ENP0227281 with effective dates of December 31, 2014 to December 31, 2015. The policy, which is in dispute, contains provisions precluding coverage where the only proof of loss is "unexplained or mysterious disappearance" and voiding coverage "in any case of fraud, intentional concealment or misrepresentation of a material fact" concerning the covered property, the interest in covered property, or a claim for coverage. ECF No. 1, Ex. A.

*///*

In August 2014, HJPE's office manager, Pam Hardiman[1], furnished an equipment list to HJPE's insurance agent listing a single road grader, a Caterpillar model 12G with an estimated value of $59,000 value. In November 2014, HJPE asked its agent to add a second road grader to the list of scheduled equipment, a 1996 Caterpillar Model 14H valued at $170,000. CIC did not request or include a serial number for the 14H or any of HJPE's equipment before issuing the policy. ECF No. 71, Ex. 22 at 156-158. A serial number was requested and furnished for a later added backhoe.

Since heavy equipment is not titled, the item's unique serial number is a means of identification and asset verification in order to obtain manufacturer's specification data and the year of manufacture.

## B. **HJPE's Reported Loss and Mistaken Notice of Loss**

On September 4, 2015, Mr. Johnson reported to the Whitman County Sherriff that a road grader had been stolen from a jobsite in Whitman County, near a bridge

---

[1] In its Reply, CIC claims the Declaration of Pam Hardiman (ECF No. 72) filed with HJPE's Response should be stricken, claiming it is "replete with hearsay." ECF No. 75 at 10. CIC cites no specific passages or individual analysis. The Motion to Strike is denied. The Declaration is not entirely hearsay and provides background which is largely immaterial to the court's determination of CIC's summary judgment Motion.

reconstruction project HJPE had performed for the County known as "the Hatley Bridge project." Mr. Johnson was interviewed by law enforcement at the site.

On or about September 8, 2015, Carol Johnson, Vice President of HJPE and Mr. Johnson's wife, e-mailed HJPE's insurance agent stating that HJPE's "1996 Caterpillar (Cat) Grader-Model 12-G" with a serial number #61M6164 had been stolen from the jobsite. ECF No. 71 at 104. The email stated: "this is a vital piece of our equipment; it is critical to our operations to expedite this matter." ECF No. 71 at 104. Later that same morning, Ms. Johnson emailed the agent stating that it was instead the 14H road grader, not the 12G. ECF No. 71 at 104. The email did not correct the serial number. *Id*.

CIC was informed of the loss on September 9, 2015 and first contacted Mr. Johnson on September 11, 2015. CIC commenced its handling of the claim. *See* ECF No. 71, Ex. 3; ECF No. 77 at 1-2.

C. **HJPE's Mistaken Proof of Loss Form**

CIC retained the services of an adjuster to assist in the valuation and documentation for the loss. Between September 10, 2015 and November 2015, CIC attempted to obtain documentation of ownership of the 14H and assist the heavy equipment adjuster's effort to establish the actual cash value of the 14H. ECF No. 9, Ex. 2. Contact was made with Mr. Johnson, law enforcement, and HJPE's former insurer. *Id*. CIC mailed the Proof of Loss form along with a cover letter dated

October 5, 2015 to HJPE. ECF No. 76, Ex. J. The cover letter stated the Proof of Loss form must be notarized and asked HJPE to "assist us preparation [sic] of the claims settlement" by providing "detail [sic] description of the claimed item to item to include but not limited to Serial and model numbers, proof of ownership and replacement cost." ECF No. 76, Ex. J at 159. It further stated "You should attach all of the estimates, inventories, receipts, bills or other materials you have relied upon to prepare the Proof of Loss at the time you return it to us." *Id.*

HJPE returned the Proof of Loss form dated October 16, 2015. It stated the 14H Grader was purchased in *2004* from Vic Allmon Equipment[2] for *$197,500* and indicated $170,000 as the "amount for which the insured claims indemnity under the policy." ECF No. 71, Ex. 6. The date and the cost of the purchase stated on the Proof of Loss form were mistaken. At Mr. Johnson's February 5, 2016 examination under oath he explained that he had handwritten the Proof of Loss form "going off memory," and then Ms. Hardiman filled out the form anew mistaking a 4 as a 9 and stating a purchase price of $197,500 instead of $147,500. Mr. Johnson signed and Ms. Hardiman notarized the form without noticing the error. He further testified that he realized that he had in fact bought the 14H in 2002 (not 2004) when he subsequently reviewed his depreciation schedule.

---

[2] Counsel advised the court at the hearing that the parties' efforts to obtain information regarding the purchase from Vic Allmon Equipment were unfruitful.

D. **Documentation Furnished by HJPE Prior to Denial of Coverage**

HJPE furnished no supporting documentation along with the Proof of Loss Form as CIC's accompanying cover letter had requested. HJPE could not locate a serial number for the 14H, a bill of sale, or maintenance records. Mr. Johnson informed CIC that his mother performed the record keeping for HJPE until 2008 and he admitted that HJPE's business records were not well maintained during that time. CIC's claims file states that Mr. Johnson told the adjuster that the 14H was in excellent condition with only 4,000 hours of operation, an amount far below the average usage of a grader of that age. ECF No. 71, Ex. 2 at 20. The adjuster offered to meet with Mr. Johnson to review the consistency of the claim that his equipment was in top condition, but he declined.

On November 4, 2015, CIC referred the claim to its special investigation unit and SIU adjuster, Dan Otterson. On November 19, 2015, CIC received HJPE's letter of representation by attorney Brian Sheldon. In December 2015, Mr. Johnson furnished CIC with an Authorization for Investigation of Claim.

On January 12, 2016, counsel for HJPE sent a letter to CIC with an Insurance Fair Conduct Act (IFCA) notice, indicating its intent to sue CIC. Included with the letter was a partial depreciation schedule and partial Daily Inspection Reports for the Hatley Bridge project. ECF NO. 71, Ex. 8. CIC responded with a request for additional information to which HJPE responded on January 20, 2016 accusing CIC

of "dilatory underwriting practices," because it did not verify the serial number (or any other indicia of ownership) prior to writing the policy. ECF No. 71, Ex. 9.

The Daily Inspection Reports on the Hatley Bridge project were drafted and signed by Mr. Johnson. The reports must list the contractor's equipment and listed only a single road grader, a the14H. ECF No. 76, Ex. F. The reports stated that the 14H was used on August 11, 2015, August 13, 2015 and August 17, 2015 when it was "moved to staging area." ECF No. 76, Ex. F.

The depreciation schedule listed the 14H as having been purchased in 2002 (not 2004 as indicated on the Proof of Loss) for $147,500 and having been fully depreciated by 2010.

HJPE obtained and supplied CIC with copies of seven NAPA store invoices for filter purchases charged to HJPE's account dated 10/13/2005, 10/14/2005, 5/22/2007, 6/14/2007, 9/13/2007, 11/26/2007, and 6/19/2014. ECF No. 71 at73-80; 103. The invoices list "14H" under the purchase order number. The parties' experts later determined that the parts were consistent with replacement parts for a 14H or a 12G. ECF No. 71.

Finally, HJPE supplied CIC with a receipt showing that on September 10, 2015, HJPE was billed $960.00 by Skyrunners Corp. of Walla Walla, Washington. Mr. Johnson informed CIC that he had chartered an airplane and flew for several hours searching for the missing 14H. ECF No. 71 at 99.

CIC requested permission to interview HJPE's accountant, but HJPE rejected the request. CIC requested names and contact information for people who could provide verification that a 14H grader was used at the project site, however this information was not furnished until after litigation commenced. ECF No. 63 (SOF No. 7); ECF No. 77 at 7-8.

E. **CIC's Investigation Continues**

Mr. Otterson and CIC's investigation continued into 2016. *See* ECF NO. 15. [3] In January and February 2016, CIC spoke with the Whitman County engineer, the Washington State Department of Transportation Hatley Bridge project supervisor, law enforcement, five workers on the Hatley Bridge project, HJPE's former insurance agent, and local heavy equipment maintenance and service providers. ECF No. 76, Ex. G. CIC's counsel corresponded with counsel about the claim on January 15th, March 21, April 11th, April 25th, May 25th, June 3rd and June 10th. CIC's investigation created more questions when it obtained the following information:

///

---

[3] HPJE objects to the admissibility of the Otterson Declaration (at ECF No. 15), relied upon by CIC in its Statement of Facts, as hearsay. ECF No. 73 at 2. The information contained therein is not hearsay in this context since it is offered here to show its effect upon CIC in evaluating HJPE's claim for coverage, rather than the truth of the matters expressed therein. *See* Fed.R.Evid. 801(c).

- A representative of HJPE's former insurer, Alaska National Insurance, informed CIC that HPJE did not have a 14H road grader insured with them. ECF No. 71 at 119;

- The Hatley Bridge project supervisor told CIC that he was at the project site on a daily basis and he saw only one road grader at the job site and the staging area. ECF No. 76, Ex. G at 110. He provided photographs of the grader used. ECF NO. 76, Ex. G.

- A heavy equipment specialist analyzed the photographs and he opined the photographs depicted a 12G not a 14H. ECF No. 15 at 3. On May 13, 2016, a representative from CIC went to HJPE's equipment yard and confirmed HJPE's possession of a 12G, which appeared to be the same grader depicted in the photographs. ECF No. 63 at 4.

- CIC determined that HJPE's 12G was manufactured in 1978. ECF No. 76, Ex G at 109.

- CIC interviewed 5 workers on the Hatley Bridge project. Jesse Walling, Jr. who performed the finish grading at the Hatley Bridge project and he told CIC he had operated a 12 series not a 14 series grader. Two employees of HJPE recalled only one grader on the project and only one in HJPE's equipment yard. Two other workers recalled only a single road grader on the project. ECF No. 76, Ex. G.

- CIC obtained HJPE's 2015 Walla Walla County Tangible Personal Property Listing. It declared ownership of just one unidentified "Road Grader." It listed the acquisition year as 1996, the acquisition price as $9500 and the estimated market value of $1425. [4] ECF No. 16, Ex. C. At his April 11, 2017 deposition, Mr. Johnson testified that the grader referred to in the County listing was the 14H, but the information furnished to the County was "falsified." ECF No. 62 at 119.

F. **Examination Under Oath**

On February 5, 2016, Mr. Johnson submitted to an examination under oath. Mr. Johnson testified that he goes to a lot of auctions, he has bought a lot of equipment from all over the world, and he has "used it up and got rid of it." ECF No. 71 at 95. Mr. Johnson testified that he was on the Hatley Bridge project site every day and that there were two road graders available. He testified that the 14H was used and he did not remember the 12G being used. ECF No. 76, Ex. D at 39. Mr. Johnson testified that upon returning to the staging site on September 4, 2015, the 14H was not there. Mr. Johnson identified Pam Hardiman as the person with "the best

---

[4] Mr. Johnson later explained at his April 11, 2017 deposition that this was a reference to the 14H and he falsely reported the acquisition cost in order to pay fewer taxes. ECF No. 62 at 119.

knowledge as to what files are maintained, where they're kept, [and] how they're kept." ECF No. 71 at 94. Mr. Johnson furnished the phone number for Keith Wesphal, the owner of the NAPA store in Walla Walla, as someone who could verify HJPE owned a 14H grader because Mr. Johnson had the 14H at Wesphal's residence. CIC did not interview Keith Wesphal.

G. **CIC's Offer to Extend Coverage for the 12G**

On March 21, 2016, CIC's counsel sent a letter to HJPE's counsel offering to "extend coverage for the 12G Grader" "subject to a continuing reservation of its rights" because "it would appear that the insured had a 12G CAT Grader on the job site at the time of the loss," but other than the Daily Inspection Reports there was "no other verification that a 14H Grader was on site at the time of the loss." ECF No. 71 at 107. The March 24, 2016 claim note file states that CIC offered coverage for the incident but was "[h]olding for the insured to provide documentation for the claim." ECF No. 76, Ex. G at 114. CIC later learned that HJPE was still in possession of the 12G grader. On April 1, 2016, HJPE's counsel responded to CIC stating that its "proposal is illegal" because its 12G grader had not been stolen and was still being used by HJPE. ECF No. 71 at 121. On April 11, 2015, CIC requested HJPE make the 12G available for inspection and explained that it was still awaiting valuation documentation for the 14H. ECF No 71 at 116-117. CIC's site inspection on May 13, 2017 confirmed the 12G was not missing.

### H. **CIC's Denial of Coverage and Commencement of Litigation**

By letter dated July 1, 2016 by Jake Cartwright, Senior Claim Specialist, CIC denied coverage for the 14H Grader, concluding that "[e]xcept for the EUO testimony of Mr. Johnson and the Daily Inspection Reports for the jobsite, there is no record that HJPE ever owned a 14H Grader at the time of loss or had one at the jobsite from which the alleged theft occurred." ECF No. 71 at 132. CIC also concluded that HJPE had made "multiple misrepresentations" to CIC "in violation of the Policy language." *Id*. at 133.

On July 6, 2016, CIC filed its Complaint for Declaratory Judgment (ECF No. 1). The Complaint seeks declaration that coverage is not owed for the alleged theft of the 14H Grader. It alleges HJPE breached a policy condition:

> Mr. Johnson breached the Concealment, Misrepresentation or Fraud condition by, among other things: (a) intentionally providing a false account of the alleged purchase of a 14H Grader; (b) intentionally providing a false account of the alleged occurrence of a theft of a 14H Grader from a jobsite in Whitman County, Washington; (c) intentionally providing false information on HJPE's proof of loss.

ECF No. 1, ¶ 15. The Complaint also alleges coverage is precluded because of the lack of sufficient evidence of an ownership interest in a 14H Grader, as well as an inadequate explanation of what happened to it:

> HJPE cannot meet its burden of proving (a) that it owned a 14H Grader; (b) the occurrence of a theft of a 14H Grader on or about September 4, 2015 from its jobsite in Whitman County, Washington.

ECF No. 1, ¶16. In its Answer, HPJE asserted five Counterclaims. ECF No. 4.

I. **Information Obtained During Litigation**

In March 2017, months after the denial of coverage, HJPE disclosed in its discovery response the names of Billy Reeves and Marko Morgan as potential witnesses having knowledge of Mr. Johnson's ownership and use of the 14H. CIC deposed Billy Reeves on June 28, 2017. He testified that he thought there were two graders on the project site and that "[n]ormally [HJPE] doesn't go do jobs without a backup." ECF No. 71 at 138-139. CIC deposed Morgan on August 10, 2017. He did not work on the Hatley Bridge project. *Id*. at 146. However, he testified he noticed two graders at the Hatley Bridge project staging area and discussed them with Mr. Johnson. ECF 71 at 144-146.

CIC submits evidence from its claims handling expert, Dennis Smith. ECF No. 62, Ex. A. In his opinion, CIC "acted in conformance with accepted and customary claims handling practices." *Id*. at 6. HJPE's expert John Craughan of Equipment Consulting Services, Inc. testified at his deposition, "from my review of the file there are things I don't agree with, but there is nothing in there that I could say that it was improper." ECF No. 77 at 11; ECF No. 76, Ex. E at 59.

II. **LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  The Supreme Court's 1986 "trilogy" of *Celotex Corp. v. Catrett*, 477 U.S. 317, (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *See Celotex*, 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56 [ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." *See Matsushita*, 475 U.S. at 587 (internal quotation and citation omitted).

In considering a motion for summary judgment, the court does not make findings of fact or determine the credibility of witnesses, *Anderson*, 477 U.S. at 255; rather, it must draw all inferences and view all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d

929, 931 (9th Cir. 2008).

## III.  DISCUSSION

CIC seeks partial summary judgment one the issue of liability as to HJPE's Second (bad faith), Third (violation of the Washington Consumer Protection Act), Fourth (violation of the Insurance Fair Conduct Act), and Fifth (injunctive relief) Counterclaims alleged in the Answer to the Complaint (ECF No. 4). HJPE concedes its claim seeking injunctive relief.

### A. Choice of Law

As this court sits in diversity jurisdiction, under the rule of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938), the court applies state substantive law and federal procedural law. In applying Washington law, the court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). " '[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.' " *Vestar Dev. II, LLC v. Gen. Dynamics Corp*., 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir.1996)).

### B. Bad Faith

"To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." *Smith v.*

*Safeco Ins. Co.*, 150 Wash.2d 478 (2003). Whether an insurer acted in bad faith is a question of fact. *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wash.2d 784 (2001). However, if reasonable minds could not differ that an insurer's denial of coverage was reasonable, the court may reach the conclusion as a matter of law. *See Smith*, 78 P.3d at 1277. "If the insurer can point to a reasonable basis for its action, this reasonable basis is significant evidence that it did not act in bad faith and may even establish that reasonable minds could not differ that its denial of coverage was justified." *Smith*, 78 P.3d at 1278.

In its Response to the Motion for Summary Judgment, HJPE identifies the following asserted instances of bad faith conduct which the court has grouped in the following five categories:

(1) Frivolously denying coverage due to HJPE's lack of evidence of ownership, "HJPE's inability to locate a serial number and due to Mr. Johnson's "innocent misstatement of the year of purchase," and alleged misrepresentations in the Proof of Loss when it was in fact just "merely a mistake";

(2) Failing to investigate the claim by ignoring evidence of ownership, "giving weight to the documents provided," and failing to investigate facts;

(3) Attempting "to induce HJPE to commit insurance fraud";

(4) Failing to reconsider denial of the claim "after the depositions were taken"; and

(5) Filing suit after denying the claim.

*See* ECF No. 69 at 11-16.

The issue for the court is not whether CIC's interpretation of the policy is correct, but whether its conduct was reasonable. The court concludes there are no genuine issues of material fact as to the reasonableness of CIC conduct. HJPE presents no evidence that CIC's actions were unreasonable. HJPE mischaracterizes the record when it suggests the denial of coverage was "based, in large part" on the lack of a serial number which CIC had failed to request, as well as HJPE's multiple misstatements. ECF No. 69 at 9-10. The absence of the serial number, the sole unique identifier ordinarily maintained in the course of business, was significant as it necessitated further investigation. Furthermore, the admitted misstatements made by HJPE, no matter the explanation behind them, originated with the insured and further complicated the investigation. The denial of coverage followed months of investigation in search of adequate substitute information and was based upon the lack of evidence of ownership of the 14H and presence of the 14H on the jobsite at the time of the alleged loss. ECF No. 71 at 124-133. There is no evidence of unreasonable or unfounded selective review; indeed it is undisputed that it took months to obtain any documentation from Mr. Johnson. HJPE's attack on the adequacy of the investigation identifies disagreements between the insurer and insured on a variety of matters including whether CIC could resist coverage on the defense of lack of insurable interest once the policy had been issued. However, mere

disagreements or even alleged sub-par investigation and evaluation of a claim cannot alone establish bad faith. Furthermore, on the facts of record, including CIC's explanation at ECF No. 71 at 106-114, no reasonable juror could conclude that CIC was attempting to "commit insurance fraud" when it made an offer of coverage for the 12G prior to learning the 12G was still in HJPE's possession. CIC expressly stated in its letter that the offer was based upon "information provided and obtained to date" and was subject to a reservation of rights and the policy language. ECF No. 71 at 114. CIC did not persist in its offer of coverage upon learning the 12G was not in fact missing.

Next, while the filing of a declaratory judgment action for an improper motive can validly support a bad faith claim, HJPE lacks evidence to support such a claim. *See e.g., State Farm Fire & Cas. Co. v. Trumble,* 663 F.Supp. 317, 320 (D.Idaho 1987)("All courts, including this court, have recognized and condoned the use of declaratory judgment actions by insurers. Therefore, merely invoking the right to a declaratory judgment action does not, in and of itself, support an action for bad faith."). There is no evidence whatsoever that CIC has filed this declaratory judgment action for an unreasonable or illegitimate purpose, such as for the purpose of forum shopping or putting financial strain on a claimant for its own economic benefit. It is not bad faith for an insurer to resort to a judicial forum to resolve a legitimate coverage dispute.

Finally, HJPE contends CIC has acted in bad faith by failing to reconsider (and presumably reverse) its denial of coverage after it completed its depositions. There is no evidence in the record suggesting that CIC was ever presented with a request for reconsideration of the denial of coverage. Regardless, an insurer learning of facts or law while a coverage suit is pending which renders the coverage suit ill-founded or frivolous may not continue the suit. Here, CIC's continuation of suit is not ill-founded where HJPE's assertion of loss of the 14H from the Hatley Bridge project remains contradicted—without explanation--by a wealth of other seemingly credible information. As CIC points out, even setting the issues of ownership aside, a genuine dispute over the valuation of HJPE's claim exists.

Construing the evidence in the light most favorable to HJPE, as this court must on summary judgment, HJPE produces no evidence that CIC's actions were unreasonable. Both CIC and HJPE's experts have observed the same. Merely conclusory statements about the alleged unreasonableness of the investigation, policy interpretations, and pursuit of this matter are insufficient.

**C. Washington Consumer Protection Act**

To prevail on a CPA claim, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105

Wash.2d 778, 784-785 (1986).

HJPE's Response does not draw any distinctions between its allegations of bad faith and its CPA and IFCA claims, collectively referring to them all as "bad faith," and relying upon the same contentions regarding CIC's claims handling. *See* ECF No. 69 at 1, fn. 1. HJPE's Answer at ¶ 5.2 asserted the following grounds for its CPA claim: (1) "Misrepresenting pertinent facts or policy provisions"; (2) "Failing to adopt and implement reasonable standards for the prompt investigation of claims"; (3) "Refusing to pay claims without conducting a reasonable investigation"; (4) "Failing to affirm or deny coverage within a reasonable time"; (5) "Compelling an[] insured to submit to litigation to recover amounts due under the policy"; (6) "Refusing to advise HJPE of the status of the investigation of the claim"; (7) "Denying the claim without a reasonable basis." ECF No. 4 at 9-10.

HJPE's claim under the CPA must be dismissed as HJPE advances the same argument which is equally unpersuasive in this context. HJPE has failed to show CIC engaged in an unfair or deceptive act or practice. HJPE's CPA claim is dismissed with prejudice.

**D. Insurance Fair Conduct Act**

Under IFCA:

> (1) Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including

reasonable attorneys' fees and litigation costs, as set forth in subsection (3) of this section.

Wash. Rev. Code § 48.30.015. Again, the court has concluded that CIC's denial of coverage was not unreasonable. HJPE's IFCA claim is dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

1. CIC's Motion for Partial Summary Judgment (ECF No. 61) is GRANTED. HJPE's bad faith, CPA, IFCA and injunctive relief Counterclaims are DISMISSED with prejudice. The only remaining issues for trial are matters related to coverage/breach of contract.

2. HJPE's Motion to Strike the Motion to Strike (ECF No. 88) is GRANTED. The Clerk shall terminate the pending motion at ECF No. 79 as it is now MOOT.

DATED this 29th day of September, 2017.

*s/Lonny R. Suko*

_____
LONNY R. SUKO
Senior U.S. District Judge